UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE No. 22-cv-21091-BLOOM/Otazo-Reyes

**MICHAEL LANDA,**

    *Plaintiff*,

  v.

**AON CORPORATION EXCESS
BENEFIT PLAN, AS AMENDED AND
RESTATED AS OF JANUARY 1, 2009,**

    *Defendant*.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT IN THE ALTERNATIVE**

Pursuant to Rule 7.1(c), S.D. Fla. L.R. and Rule 56, Fed. R. Civ. P., Plaintiff Michael Landa ("Plaintiff" or "Landa") responds in opposition to Defendant Aon Corporation Excess Benefit Plan's ("Defendant," "Aon," or "Plan") Motion to Dismiss or for Summary Judgment in the Alternative (ECF No. 15) (the "Motion"). For the reasons set forth below, the Motion is without merit and should be denied.

**INTRODUCTION**

After receiving assurances that his Plan benefits payments would start on December 1, 2021, Defendant advised Plaintiff on the eve of his first benefit distribution that his benefits were suspended pending a supposed review of alleged competitive activity, and that he would be "notified of the determination upon completion of this review." Defendant failed to provide a timely benefits determination, and in fact proceeded to ignore Plaintiff for the next five months. Following five months of silence and not having received any determination by, or

communication from, Aon regarding his Plan benefits, Landa filed suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") to recover benefits under the Plan.

After suit was filed, Defendant moved to dismiss the Complaint and for summary judgment arguing that Plaintiff failed to exhaust administrative remedies and the Court should dismiss the Complaint and order Plaintiff to pursue the Plan's administrative remedies. However, Defendant's Motion fundamentally misunderstands the case law and the procedural posture of this case. It fails to cite even one case with similar facts, where a plan did not issue a benefits determination until after the plaintiff filed suit.

In such cases, administrative remedies are "deemed exhausted" by operation of law and the standard of review is *de novo*. Moreover, here, the Plan failed to provide meaningful access to administrative review and Defendant fails to demonstrate any evidence compelling a different finding. Therefore, Defendant's Motion to Dismiss should be denied. Defendant's Motion for Summary Judgment also fails because the Plan is not entitled to judgment as a matter of law on the exhaustion requirement.

## PLAINTIFF'S STATEMENT OF FACTS RELEVANT TO THE RESPONSE

Michael Landa was employed by Aon Risk Services, Inc. of Florida ("ARS Florida") for over 25 years. At the time of his resignation, Landa was an Executive Vice President of ARS Florida. Plaintiff was an eligible participant and Member of the Aon Corporation Excess Benefit Plan as Amended and Restated as of January 1, 2009. *See* Plaintiff's Statement of Material Facts ("Plaintiff's Facts"), ¶ 28.[1]

---

[1] Plaintiff's Statement of Material Facts is filed contemporaneously with the Response.

Landa resigned from ARS Florida on June 10, 2021. But because his employment agreement had a 90-day notice clause, Plaintiff's employment was not deemed terminated until September 8, 2021. Plaintiff's Facts, ¶ 29. On October 11, 2021, after his employment with Aon was deemed terminated – and months after Aon filed suit against Plaintiff, other former Aon executives and employees, and Marsh USA Inc. on June 24, 2021 (the "Marsh Litigation") alleging that the former Aon employee defendants, including Landa, breached the restrictive covenants in their employment agreements[2] – Aon sent Plaintiff a "Excess Benefit Plan Payment Notice." (The "Plan Payment Notice"). Plaintiff's Facts, ¶ 30.

The Plan Payment Notice confirmed that Landa would begin receiving payments effective October 1, 2021, the month following the termination of Plaintiff's employment. Plaintiff's Facts, ¶ 31. The Payment Plan Notice included a pension calculation statement indicating how the Plan benefits were calculated and indicating the number and amount of the benefit payments, and provided copies of direct deposit, tax withholding, and beneficiary designation forms to be completed by the Plaintiff to commence receipt of his Plan benefit payments. *Id*., ¶ 32. On November 3, 2021, Landa also received an Excess Benefit Plan FICA Notice advising that his Plan benefits payments would be subject to FICA taxes. *Id*., ¶ 34.

On or about November 2, 2021, Plaintiff completed and submitted the forms provided by Defendant for commencement of benefits under the Plan. Plaintiff's Facts, ¶ 33. He received confirmations from the Plan that his benefit payments would begin on December 1, 2021. *Id*. at ¶ 35 (detailing calls by Landa with Aon on November 8, 2021 and December 1, 2021) confirming Plan benefits were scheduled to begin on December 1, 2021).

---

[2] Contrary to Defendant's inferences (Motion, ECF No. 15 at pp. 2-3), the court did not make findings of wrongdoing by any defendant in the Marsh Litigation, and Landa affirmatively denied any wrongdoing. *See* Plaintiff's Facts, ¶ 8.

But instead of issuing Plaintiff his scheduled Plan benefits, Defendant sent Landa a letter via Federal Express dated November 30, 2021 (the "November Suspension Letter") – on the eve of when his Plan benefits were scheduled to begin – stating that payment of Plaintiff's benefits were indefinitely "suspended, effective immediately" due to a "pending review of [his] potential violation(s) of the Plan's prohibitions on competitive activity (Section 4.4(b) of the Plan)." ECF No. 1-2; Plaintiff's Facts, ¶ 36. No specific timeline was provided in the November Suspension Letter, stating only that "You will be notified of the determination upon completion of this review." *Id*., ¶¶ 38, 40. It is unclear whether a review was conducted by Aon, but it was certainly not completed or communicated to Plaintiff in accordance with the Plan provisions.

By its own terms, the Plan states that written notice of denial of Plan benefits must be provided to the claimant **within 90 days** after the Plan Administrative Committee receives the claim. ECF No. 1-1 at 28, Section 6.3(b) (emphasis added); Plaintiff's Facts, ¶ 37. The Plan provides further that if an extension of the 90 day period is required, written notice of the extension is to be furnished to the claimant prior to termination of the initial 90-day time period. *Id*. Plaintiff was neither provided with written notice of a denial of Plan benefits within 90-days of submission of his claim – or even from receipt of the November Suspension Letter – nor did Aon send Plaintiff written notice that it would need an additional extension of the 90-day period. *Id*., ¶¶ 38-42. For months, Aon simply ignored Plaintiff's claim for benefits. *Id*., ¶ 43.

On March 4, 2022, after the passage of several months and not having heard from Aon, counsel for Landa sent a letter to Defendant demanding payment of currently due and past due Plan benefits. ECF No. 1-3. No response was received from Aon to the March 4, 2022 letter, and Aon continued to give Plaintiff the silent treatment. Plaintiff's Facts, ¶ 44.

4

Because he did not receive a response to the March 4, 2021 letter, Plaintiff filed the instant litigation on April 11, 2022.  ECF No. 1.

In fact, Aon failed to provide *any communication* to Plaintiff regarding his Plan benefits for five months (from November 30, 2021 through April 28, 2022, well beyond the 90-day period set forth in the Plan, and only after this litigation was commenced.  Plaintiff's Facts, ¶¶ 43, 46.  It was not until April 29, 2022 that Aon sent Plaintiff a letter[3] summarily stating that "as a consequence of your violation of Section 4.4 of the Aon [Plan], it has been determined that you have forfeited any right to receive payments or benefits under the Plan."  ECF No. 16-4, at 7 (the "Forfeiture Notice").  *Id*.  The Forfeiture Notice did not contain the specific reason or reasons for the denial.  *Id*.

By disregarding the terms of the Plan and waiting until after suit was filed to issue a benefit determination, Defendant failed to satisfy its initial burden of demonstrating an absence of evidence to support satisfaction of the exhaustion requirement.

## STANDARD OF REVIEW

In order to state a claim, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must consider the allegations contained in Plaintiff's complaint as true.  *Gilbert v. Suntrust Banks, Inc.*, 2015 WL 11660244, at *1 (S.D. Fla. Sept. 18, 2015).  These allegations must contain sufficient factual detail, which when accepted as true, state a claim for relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[3] The Forfeiture Notice was also emailed to Plaintiff's counsel that same day. See ECF No. 16-4 at 5.

However, the satisfaction of a condition precedent—such as exhaustion of administrative remedies—can be alleged generally. *See Markwart v. United Parcel Serv., Inc.*, 2013 WL 3864347, at *5 (M.D. Fla. July 24, 2013) ("Under Fed. R. Civ. P. 9(c), satisfaction of a condition precedent need only be alleged generally. . . . Here, the Plaintiff alleges that she administratively exhausted her claim, therefore; the Motion to Dismiss Count IV is due to be denied."); *Gilbert*, 2015 WL 11660244, at *2 ("[T]he Court finds, at this juncture in the litigation, Defendant's argument that Plaintiffs failed to exhaust their administrative remedies is premature.").

Summary judgment, on the other hand, is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the initial burden to show the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Defendant's Motion fails to meet this burden.

There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court should view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but should not make credibility determinations or weigh the evidence. *Id.* at 249. Finally, "the evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

## **ARGUMENT**

Defendant's two bases for dismissal of Plaintiff's complaint or for summary judgment are without merit. First, Plaintiff has satisfied the exhaustion requirement because Defendant failed to comply with the requirements of the ERISA Regulations; the Plan had no procedure for appeal

6

of the November Suspension Letter; and, even if the Plan had such a procedure, the Plan failed to give notice to Plaintiff of same. Second, Plaintiff has stated a cause of action independent of whether the Plan's failure to comply with the ERISA Regulations was a waiver of its right to issue an adverse benefits determination. When a claimant files suit before an employee benefit plan has issued a benefits determination but after the deadline for the plan to issue the benefits determination has passed, courts review the claim *de novo*. Therefore, this Court should deny Defendant's Motion.

I. **DEFENDANT'S ARGUMENTS FOR DISMISSAL OR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE PLAINTIFF HAS SATISFIED THE EXHAUSTION REQUIREMENT**

Plaintiff satisfied the exhaustion requirement by operation of law. First, Plaintiff "shall be deemed to have exhausted the administrative remedies available under the plan" because the Plan failed to establish and follow claims procedures consistent with the requirements of ERISA Regulation § 2560.503-1.[4] Second, an exception to the exhaustion requirement is applicable because the Plan did not provide a reasonable administrative scheme for review.

   A. *Plaintiff Should be Deemed to Have Exhausted the Plan's Administrative Remedies Because the Plan Failed to Establish and Follow the Required Claims Procedures.*

ERISA Regulation § 2560.503-1(l)(1) states that "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant ***shall*** be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a)." ERISA Regulation § 2560.503-1(l)(1) (emphasis added). "[T]he requirements of this section" include the

---

[4] The regulations implementing ERISA are promulgated by the Department of Labor and codified at title 29 of the Code of Federal Regulations. For example, ERISA Regulation § 2560.503-1(l)(1) can be found at 29 C.F.R. § 2560.503-1(l)(1).

7

90-day notice requirement contained in ERISA Regulation § 2560.503-1(f)(1).  *See Coates v. Guardian Life Ins. Co. of Am.*, 2008 WL 269133, at *2 (M.D. Fla. Jan. 30, 2008) ("The applicable regulations clearly permit the claimant to pursue his remedies of filing suit if the plan administrator has neglected to timely deny the claim, characterizing the situation as a 'deemed' exhaustion of administrative remedies.").  Because the Plan failed to comply with the deadline provided by the ERISA regulations, Landa should be "deemed to have exhausted the administrative remedies under the plan."

Defendant does not argue that it complied with the requirements of ERISA Regulation § 2560.503-1.  Nor can it.  Instead, it merely argues that its noncompliance was "technical" and, therefore, according to Defendant, inconsequential. In support, Defendant cites *Perrino v. Southern Bell Telephone & Telephone Co.*, 209 F.3d 1309 (11th Cir. 2000).  However, that case was decided before the Department of Labor amended ERISA Regulation § 2560.503-1(l)(1) effective January 20, 2001, which now explicitly provides that administrative remedies under the plan are deemed exhausted if the plan fails to comply with the regulations.[5]  Consequently, *Perrino* is inapplicable to the facts before this Court.  *See Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300, 1309 (M.D. Fla. 2009) (noting that *Perrino* was decided before the regulations were amended and that other courts have held that, unlike in *Perrino*, "the issue is not

---

[5] The prior version of the regulation provided that if the administrator failed to provide the claimant with notice that its claim was denied within a reasonable time, the claim was "deemed denied." *Wilson v. Walgreen Income Prot. Plan for Pharmacists & Registered Nurses*, 2015 WL 4528962, at *10 (M.D. Fla. July 27, 2015). Some courts, like in *Wilson*, have held that the current regulation has the same legal effect as the prior regulation. *See id.* Those courts, however, still find *Perrino* inapplicable when a plan fails to issue a timely benefits determination. *See, e.g., id.* at *13 n.17 ("This case is distinguishable because here Sedgwick's actions, and primarily inaction, constitutes more than a mere technical violation."); *see also Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 223 (2d Cir. 2006) ("In the instant case, there was no compliance, substantial or otherwise, with ERISA's claim requirements until after Coyne's suit accrued.").

whether the failure to exhaust administrative remedies should be excused by the Court as an equitable measure" but rather whether "29 C.F.R. 2560.503–1(l) has deemed administrative remedies exhausted").

In *Tindell*, Judge Howard analyzed several cases and distinguished those in which the plaintiff filed suit "after the regulatory deadlines had expired and without having received a decision from the plan administrator" from those in which "a plan administrator fails to strictly comply with the regulatory deadlines in rendering a claim decision, but nevertheless provides the claimant with an administrative decision before the claimant files suit." *See id.* at 1309-10. The Court explained:

> [I]f a plan administrator fails to issue a timely decision on a claim for benefits or an appeal, the claimant may deem her administrative remedies exhausted and immediately proceed to court. . . . However, if the claimant waits for the plan administrator to issue a determination, then the claimant should pursue the administrative route to its end.

*Id.* at 1311. There is no dispute that this case falls within the former category. *See* ECF No. 16 at ¶¶ 15-16 (stating that Landa filed suit on April 11, 2022 and the Plan issued the "Forfeiture Notice" on April 29, 2022).

For example, one of the cases that Judge Howard considered was *Linder v. BYK-Chemie USA Inc.*, 313 F. Supp. 2d 88, 94 (D. Conn. 2004). There, the court denied the defendant's motion for summary judgment based on exhaustion because the plaintiff filed suit after the 90-day deadline had passed and before the administrator had issued a written decision. *Id.* at 93. "The ERISA regulations are clear that claimants are 'deemed to have exhausted administrative remedies' in such circumstances." *Id.* As the court explained:

> However well-meaning the [Plan] Committee, the regulation is unequivocal that any failure to adhere to a proper claims procedure is sufficient to deem administrative remedies exhausted. Moreover, the regulation contains no exception

9

>  for lack of prejudice, and the cases defendant cites, all issued prior to 2002, have
>  no bearing on the case at hand.

*Id.* at 94. The same is true here and the Court should similarly reject Defendant's Motion for dismissal or summary judgment.

### B. The Exception for Failure to Provide Meaningful Access to Administrative Review is Applicable.

Defendant claims that it provided Landa with meaningful access to administrative review because he can appeal the Forfeiture Notice, despite the fact that the Forfeiture Notice was sent to Landa 18 days *after* Landa filed this lawsuit. But neither the case law nor the facts before the Court compel that result. Defendant's argument fails to recognize that the exhaustion requirement is a pre-suit requirement. *See Wilson*, 2015 WL 4528962, at *6 n.11, 10 (finding plaintiff's administrative remedies exhausted despite fact that plan took several actions, including a formal denial of the plaintiff's claim, after the plaintiff filed suit, and noting that these post-suit actions were immaterial); *Eastman Kodak,* 452 F.3d at 221-23 (affirming the applicability of the "deemed exhausted" regulation and refusing to require the plaintiff to comply with administrative procedures adopted after suit had been filed). Even Defendant's papers tacitly recognize this truth. *See* Defendant's Facts, ECF No. 16 at ¶ 21 (stating that the Forfeiture Notice informed Plaintiff that "you must exhaust all administrative remedies . . . before seeking any legal recourse in court"); Motion, ECF No. 15 at p. 4 (same). The Plan's attempted creation of new post-suit avenues for administrative review is too little, too late.

To allow a plan to create post-suit avenues for administrative review that plaintiffs must exhaust would render "the regulation . . . worse than ineffectual: it would create perverse incentives for plans not to meet their obligations under ERISA." *Eastman Kodak*, 452 F.3d at 221-22. "Plans without ERISA-compliant claims procedures in place

would have the power to force claimants, first, to resort to litigation to obtain their benefits, and then, to abandon their suit." *Id.* at 222. Moreover, "[a] contrary rule would allow claimants, who are entitled to sue once a claim had been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced." *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003); *see also Fessenden v. Reliance Standard Life Ins.*, 927 F.3d 998, 1005 (7th Cir. 2019) ("[A]n administrator who has more time may get an unfair advantage: it could sandbag a claimant who sues at the point of exhaustion by issuing a decision tailored to combat her complaint."). This is precisely the procedural farce Defendant here seeks to impose on Landa after waiting months to reach a benefits decision that lacks any reasoning.

Defendant also implies that Landa should have appealed the November Suspension Letter. *See* Motion, ECF No. 15 at pp. 3-4 (stating that "[p]laintiff did not file an appeal of the Suspension Notice" and "[d]espite not having attempted to appeal the Plan's Suspension Notice prior to filing suit, Plaintiff claims that . . . he 'shall be deemed to have exhausted his administrative remedies'"). However, there is no provision in the Plan that allows review of "suspensions," and even if there were, the November Suspension Letter did not give Plaintiff notice of the availability of such review.

The only appeal provision in the Plan is Section 6.3(c), which states: "[a]n applicant (or his duly authorized representative) whose claim has been denied in whole or in part may appeal such denial to the Committee by making a written request for a review and may review pertinent documents and submit issue and comments in writing." *Id*. This provision does not apply to the November Suspension Letter because the November Suspension Letter was not an adverse benefit

determination and it did not deny Plaintiff's claim "in whole or in part."  Plaintiff's Facts, ¶¶ 36-43.

Defendant does not claim that the November Suspension Letter was an adverse benefits determination. Nor does Defendant state that the Plan allowed for appeal of the November Suspension Letter.  To the extent Defendant implied such a procedure was available, it is incorrect.  There was no available administrative remedy for review of the November Suspension Letter.  Plaintiff's Facts, ¶¶ 36-43.  Defendant has not—and indeed cannot—cite to any provision of the Plan that would allow for review of the November Suspension Letter.

Moreover, even if the Plan allowed for an appeal of the November Suspension Letter, the November Suspension Letter failed to give Landa notice of this procedure.  The "meaningful access" exception to the exhaustion requirement may be found where a claimant is not told a review procedure is available or how to file an appeal.  *See, e.g.*, *Boesl v. Suburban Trust & Sav. Bank*, 642 F. Supp. 1503, 1516 (N.D. Ill. 1986).  Here, Plaintiff pleaded—and there is no dispute that—the November Suspension Letter did not inform Landa of the availability of any review or appeal procedure.  Therefore, even if Defendant claims that the November Suspension Letter was an adverse benefits determination and could have been appealed, Defendant nevertheless failed to provide meaningful access to administrative review.

In sum, there was no administrative remedy with respect to the Forfeiture Notice because Defendant did not issue the Forfeiture Notice until after Landa filed this lawsuit.  Further, there was no available administrative remedy for review of the November Suspension Letter, and even if there were, Defendant failed to give Plaintiff notice that such review was available.  Therefore, Defendant has failed to provide meaningful access to administrative review.

## II. PLAINTIFF HAS STATED A CLAIM TO RECOVER BENEFITS UNDER ERISA

Defendant argues that "technical noncompliance with ERISA procedural regulations does not eliminate the Plan's ability to make an adverse benefits determination, or even the effect of the deference owed to that decision." Motion, ECF No. 15 at p. 13. Defendant therefore requests that the Court remand this case to the Plan administrator for an appeal of the Forfeiture Notice.

Defendant cites to *Counts v. Am. Gen. Life & Acc. Ins.*, 111 F.3d 105 (11th Cir. 1997), *Florida Health Sciences Center, Inc. v. Total Plastics, Inc.*, 496 F. App'x 6 (11th Cir. 2012), and *O.D. v. Jones Lang Lasalle Medical PPO Plus Plan*, 772 F. App'x 800, 805 (11th Cir. 2019) in support of its argument. Each of these cases considered whether notice of an adverse benefits determination had the required substance. None were cases like this one, where the Plan completely failed to issue a benefits determination within the timeframe allotted by the ERISA Regulations and before Plaintiff filed suit.

In cases such as this one, courts apply a *de novo* standard of review. Where a plan completely fails to issue a benefits determination and a claimant is forced to file suit against the plan, there is nothing for the court to give deference to. *See Fessenden*, 927 F.3d at 1005 ("Th[e arbitrary and capricious] standard cannot be applied to an untimely decision because there is *nothing* to review at the time that administrative remedies are deemed exhausted. There is no explanation for a claimant to read and understand. And if the claimant files suit before the decision arrives, there is neither an exercise of discretion to which a court could defer nor anything for the court to use to measure the degree of the administrator's compliance.") (emphasis in original).

That is why most circuits and most district courts in this Circuit have applied a *de novo* standard of review in "deemed denied" and "deemed exhausted" cases. *See Wilson*, 2015 WL 4528962, at *10-13 (noting that although the Eleventh Circuit has not yet

decided the standard of review, the majority of other circuit courts and district courts within the Eleventh Circuit have determined that the *de novo* standard of review is applicable in deemed denied cases); *Coates v. Guardian Life Ins. Co. of Am.*, 2008 WL 269133, at *2-3 (M.D. Fla. Jan. 30, 2008) (concluding *de novo* review is proper where the plan administrator fails to issue benefits determination); *Stefansson v. Equitable Life Assur. Soc'y of U.S.*, 2005 WL 2277486, at *12 (M.D. Ga. Sept. 19, 2005) (reasoning that a deferential standard of review would be inconsistent with Supreme Court precedent in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) because that case stated that "not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion" but where an administrator fails to issue a decision it is not exercising its discretion).

Therefore, Plaintiff has stated a claim even if Defendant's failure to comply with the ERISA Regulations was not a waiver of its ability to deny Plaintiff's claim, and triable issues of material fact remain with respect to Plaintiff's Plan benefits that will be subject to *de novo* review by the Court.

## III.  DEFENDANT IS NOT ENTITLED TO ATTORNEYS' FEES

After making representations to Plaintiff that his Plan benefits would commence on December 1, 2021, Defendant then suspended the benefits and stonewalled the Plaintiff for five months, providing no information whatsoever regarding the status of his Plan benefits, thereby necessitating the filing of this action. That Defendant would seek attorney's fees after its own inaction precipitated the litigation to be filed is perplexing and misguided. And, as demonstrated above, there is no basis for Plaintiff not to continue to pursue the litigation in light of ERISA Regulation § 2560.503-1(l)(1).

Defendant is not entitled to attorneys' fees even if it were to prevail on its Motion. The law provides no presumption in favor of granting attorney's fees to the prevailing party in an ERISA case. However, a fees claimant is still required to show some degree of success on the merits. *Hardt v. Reliance Standard Life Ins.*, 560 U.S. 242, 255 (2010). A party is not entitled to attorneys' fees for achieving "trivial success on the merits" or a "purely procedural victory." *Id.*

If the Court were to determine that Defendant has achieved some degree of success on the merits, it should then consider the five-factor test adopted by the Eleventh Circuit. *Cross v. Quality Mgmt. Grp., LLC*, 491 F. App'x 53, 56 (11th Cir. 2012) (affirming district court's "secondary use of the five-factor test"). In particular, the five factors that the Court should consider are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) the relative merits of the parties' positions."

*Freeman v. Cont'l Ins.*, 996 F.2d 1116, 1119 (11th Cir. 1993). "[N]one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address. . . . In particular types of cases, or in any individual case, however, other considerations may be relevant as well." *Id.* (citation omitted).

The Eleventh Circuit has cautioned, however, that in applying these criteria, courts should remember ERISA's "essential remedial purpose," i.e. to protect the beneficiaries of private pension plans. *Nachwalter v. Christie*, 805 F.2d 956, 962 (11th Cir. 1986). "Adherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose." *Id.*

15

Here, even if Defendant were to succeed on its Motion, its success would be merely a procedural victory. Therefore, the Court need not even consider the five-factor test. However, each of the five factors also supports denying Defendant's request for attorneys' fees. Therefore, Defendant is not entitled to attorneys' fees even if it were to succeed on its Motion.

## CONCLUSION

For the reasons set forth above, Plaintiff has stated an ERISA claim to recover benefits under the Plan and this Court should deny Defendants Motion to Dismiss or for Summary Judgment in the Alternative.

Dated: June 24, 2022　　　　　　　　　　**CARLTON FIELDS, P.A.**

　　　　　　　　　　　　　　　By:　/s/ *Irma Reboso Solares*
　　　　　　　　　　　　　　　　　　Steven J. Brodie (FBN 333069)
　　　　　　　　　　　　　　　　　　sbrodie@carltonfields.com
　　　　　　　　　　　　　　　　　　Irma Reboso Solares (FBN 797073)
　　　　　　　　　　　　　　　　　　isolares@carltonfields.com
　　　　　　　　　　　　　　　　　　Carlton Fields, P.A.
　　　　　　　　　　　　　　　　　　2 MiamiCentral, Suite 1200
　　　　　　　　　　　　　　　　　　700 N.W. 1st Avenue
　　　　　　　　　　　　　　　　　　Miami, Florida 33131-2113
　　　　　　　　　　　　　　　　　　Telephone:　(305) 530-0050
　　　　　　　　　　　　　　　　　　Facsimile:　(305) 530-0055

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

/s/ *Irma Reboso Solares*
Irma Reboso Solares